UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
CASE NO:  9:20-cv-80945-DMM

STEPHEN BOVE,

                    Plaintiff,

vs.

XPO LOGISTICS EXPRESS, LLC, DEJAH
XPRESS LLC, and KIMBERLY SANDERS,

                    Defendants.

_____/

## PLAINTIFF'S MOTIONS IN LIMINE AND INCORPORATED MEMORANDUM

COMES NOW, Plaintiff STEPHEN BOVE, by and through his undersigned counsel, and hereby, files this his Motions in Limine, seeking the Court enter Orders preventing testimony, questioning, references, or implications as follows:

### Motion in Limine – Expert Opinions by Candice Hamlin or References to Prior Acts

Defendants should be precluded from eliciting Expert Opinions from Candice Hamlin, Defendant Kimberly Sanders' co-driver, as she has no basis or qualifications for her opinions. Ms. Hamlin was not disclosed as an Expert by Defendants in their Expert Disclosure. **Ex. 1**. Her knowledge of trucking practices is not lay knowledge but may be considered specialized knowledge under Rule 702, Fed. R. Civ. P. At Ms. Hamlin's deposition, Defense counsel elicited a number of opinions which were expert in nature, directly related to this crash. **Ex. 2** Depo. Hamlin 104:22-107:10, 115:8-17; 122:23-123:6. Plaintiff's counsel, in response, asked if she was intending to give expert testimony, for which she indicated she might. *Id.* at 133:19-134:10. Similarly, Ms. Hamlin testified about prior acts of Defendant Kimberly Sanders with an Implication of acting in accordance with prior acts at the time of the crash. **Ex. 2** Depo. Hamlin 107:3-10, 110:14-20, 114:8-18, 122:23-123:6, 133:5-10.

Besides failing to be disclosed by Defendants under Rule 26 – which alone should disqualify her to testify about expert opinions, she is not qualified to give any opinions about the actions and behaviors directly attributable to this case. *See* Rule 702; *U.S. v. Fraizer*, 387 F.3d 1244, 1260-61 (11th Cir. 2004). This is because Ms. Hamlin is not qualified based upon training, education, or experience to analyze behaviors and render opinions as to specific actions being in conformity with industry standards – not to mention she specifically testified to a lack of knowledge of key facts. Including, she testified that: (1) she was asleep at the time of the crash; (2) she does not know if Ms. Sanders did anything wrong by hitting the "safest vehicle"; (3) not knowing what speed Ms. Sanders was going during the events leading up to the crash; (4) she has no qualifications to do accident reconstruction; (5) she has no qualifications to do video analysis; (6) she has never done a review of other accident crashes to perform an analysis; and (7) she has never testified as an expert before. **Ex. 2** Depo. Hamlin 44:8-10, 106:3-10, 132:8-133:17, 134:11-137:19.

Clearly, she has no qualifications to give an analysis. She has not reviewed the speeds involved yet says Defendant Sanders was driving appropriately. Interestingly, the actual speeds involved pursuant to the accident reconstructionists (both parties) agree that Defendant Sanders was going 70 mph on wet roads up until 18 seconds pre-crash when she slowed to 68 mph and maintained that speed until 8-8.2 seconds before the crash. **Ex. 3** Melcher Depo. 66:20-25; **Ex. 4** Vadnais Depo. 52:5-8**.** This is interesting because Ms. Hamlin also testified, based upon the conditions of the roadway and the fact that the trailer was empty, the vehicle should not have been going the speed limit but at least 5-10 mph under. **Ex. 2** Depo. Hamlin 31:22-32:9, 36:8-37:3, 131:3-132:1. Therefore, she lacks the knowledge and lacks the qualifications and lacks the disclosure to testify as an expert analyzing behavior in this crash.

Additionally, testimony about prior good acts for example "driving safely" or "reducing

speed" would be overly prejudicial and not probative under a Rule 403 analysis. Further, it is improper to make an argument that prior "good acts" mean that someone acted in conformity with that at the relevant times or prove good act conformity. *See J.V. v. Seminole Cty. Sch. Bd.,* 2007 U.S. Dist. LEXIS 98385, at *34 (M.D. Fla. Mar. 20, 2007). Furthermore, this does not qualify as a habit under Rule 406 and would not meet the threshold for it (especially in light of the actual evidence of speed and behavior). *See United States v. Aguirre,* 368 F. App'x 979, 990 (11th Cir. 2010)(A proponent of habit evidence "must show that the conduct occurred so often that it permits an inference of systematic conduct").

Wherefore, Defendants should be denied using Ms. Hamlin as an expert or giving testimony about prior driving behavior.

## Motion in Limine – FMCSA Makes Defendant Sanders a Statutory Employee

Defendant XPO LOGISTICS EXPRESS, LLC should not be permitted to characterize Defendant Kimberly Sanders as an independent contractor to hide the fact that she is a statutory employee. Defendant XPO LOGISTICS EXPRESS, LLC is a motor carrier and as such bound by the Federal Motor Carrier Safety Act. Any driver, who is operating a commercial vehicle on behalf of a motor carrier, is defined as an employee and designating them as an "independent contractor" does not defeat this. 49 C.F.R. §390.5; *see Judy v. Tri-State Motor Transit Co.,* 844 F.2d 1496, 1500-1503 (11th Cir. 1988); *Lohr v. Zehner,* 2014 U.S. Dist. LEXIS 75216, at *11-14 (M.D. Ala. June 3, 2014); *Morris v. JTM Materials, Inc.*, 78 S.W.3d 28, 37-38 (Tex. Ct. App. 2003)(an interstate carrier is vicariously liable as a matter of law . . . for the negligence of its statutory employee drivers"). Defendant Kimberly Sanders was operating on Defendant XPO's behalf and the jury should be aware of their relation to this case and vicarious liability therefore. **Ex. 5** Depo. Sanders 44:7-19; **Ex. 6** Depo. Strange 44:4-45:11.

Wherefore, Plaintiff moves the Court to determine that Defendant Kimberly Sanders was a statutory employee of Defendant XPO Logistics Express, LLC.

### Motion in Limine – Regarding Prior Accident

Plaintiff was in a prior accident in May 2018. Plaintiff testified that he was not injured and sought no medical care therefrom. **Ex. 7** Bove Depo. 25:2-27:24, 101:6-9. Plaintiff's mother also testified that he was not hurt in the crash. **Ex. 8** Grace Bove 36:20-37:2.  No medical records exist related to that crash, because Plaintiff was not injured. Further proof comes from the lack of PIP payment log from Plaintiff's insurance company for which Defendants had issued a subpoena to discover. Plaintiff believes Defendants intend to bring out facts and testimony regarding this prior crash.

The fact that he was in a prior crash, where he was not injured and sought no treatment, is irrelevant to the claims and defenses in this case – because again there are no medical records or evidence of injury. Even if it was somehow relevant, anything regarding the prior crash would only serve to prejudice and confuse the jury, in violation of Rule 403.

Wherefore, Plaintiff moves the Court to exclude any testimony or discussion dealing with the prior accident, of which there was no injury and no medical treatment.

### Motion in Limine – Regarding Secondary Financial Gain

It is anticipated that Defendants will seek to discredit Plaintiff's credibility and character by eliciting speculative testimony from physicians hired by the defense) that Plaintiff's complaints are *prompted by "secondary (financial) gain."*  In particular, Plaintiff anticipates that defense counsel will attempt to elicit testimony that directly suggests or implies that Plaintiff is "malingering," that his complaints are exaggerated, that litigation affects his motivation to get better, that he is motivated by the possibility of financial gain, and other related conjectures. Plaintiff is concerned

based upon the Preliminary Report of Dr. Goldschmidt. **Ex. 1**, pdf pages 155, 157, 158, 160-162, 164, 167, 168, and 171. As of this report, Dr. Goldschmidt had not ever met Plaintiff. The Rule 35 examination for neuropsychiatry took place on 1/21/21 – and Defendants at **3:54 p.m. on February 12, 2021**, served a late supplement of 47 pages. Malingering is defined as the "intentional production of false or grossly exaggerated physical or psychological symptoms motivated by external incentives. *See* DSM TR, p. 738, American Psychiatric Association, 2000). This is tantamount to accusing the Plaintiff of a felony and as such, must be fully based on science, not sophistry or conjecture. *See* Fla. Stat. § 817.234. Such testimony or argument is improper. It is inadmissible for four reasons: **(1)** It consists entirely of guesses, conjectures and speculation (i.e. mere suppositions without premise of fact); **(2)** The nature of the testimony does not require any special knowledge or experience in order for the jury to form its conclusions; **(3)** Such testimony is an attack on Plaintiff's credibility and character by innuendo and supposition; and **(4)** The probative value, if any, is far outweighed by the highly prejudicial impact.

### 1. Speculation and Conjecture

Testimony consisting of guesses, conjectures or speculation (i.e. consisting of suppositions without premise of fact) is inadmissible. *See McDowell v. Brown,* 392 F.3d 1283, 1298 (11th Cir. 2004)*; United States v. 0.161 Acres of Land,* 837 F.2d 1036, 1040 (11th Cir. 1988). Qualification of a witness as an expert, as well as the range of subjects about which the witness will be allowed to testify, are within the trial judge's broad discretion. The "burden of laying the proper foundation for the admission of expert testimony is on the party offering the expert, and the admissibility must be shown by a preponderance of the evidence." *McCorvey v. Baxter Healthcare Corp.,* 298 F.3d 1253, 1256 (11th Cir. 2002). This is because "Daubert requires that trial courts act as "gatekeepers" to ensure that speculative, unreliable expert testimony does not reach the jury." *Id.* There is absolutely

no evidence to suggest that Plaintiff is malingering. Even if there were evidence that Plaintiff was malingering (which there is <u>not</u>), why he might do so is speculative and full of conjecture. An opinion must be based in fact in order to meet the test of admissibility. Just because secondary gain is one reason why one might malinger, there may be thousands of others. To allow an expert to provide testimony based upon speculation and conjecture is highly prejudicial, and fails under Rule 702. *See id.*. The mere vehicle of its delivery (from the lips of one referred to as an *"expert"*) lends weight and believability to testimony that in reality is nothing more than speculation and conjecture.

## 2. Opinion Invades the Province of the Jury

Expert testimony should be excluded where the facts testified to are of such a nature as not to require any special knowledge or experience in order for the jury to form conclusions from the facts. *United States v. Frazier,* 387 F.3d 1244, 1262-63 (11th Cir. 2004). "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments. *Id.* It is well within the province of the jury to assess credibility. Furthermore, "[A] witness's credibility is 'not appropriate subject matter for expert testimony.'" *Fagundez v. Louisville Ladder, Inc.,* 2012 U.S. Dist. LEXIS 9349, at *5 (S.D. Fla. Jan. 26, 2012) quoting *United States v. Welch,* 368 F.3d 970, 975 (7th Cir. 2004).

In light of the fact that juries often give much credence to an expert's testimony and opinion, trial judges are cautioned to exclude such testimony where facts testified to are of a kind that do not require any special knowledge or experience to form a conclusion, or are of such a character that they should be presumed to be within the common experience of all persons moving in the ordinary walks of life. *See Frazier,* 387 F.3d at 1260 (highlighting importance of gatekeeper role since expert's opinion "can be both powerful and quite misleading"). "Simply put, expert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the district

courts must take care to weigh the value of such evidence against its potential to mislead or confuse." *Id.* at 1263.

Whether a plaintiff is motivated by financial gain is for the jury to decide. There is no need for Defendant's expert witnesses to give their opinions on this matter.

### 3. Inappropriate Comment on the Credibility Of A Witness

As a matter of Florida law, Courts have also held it is reversible error to allow counsel to cross-examine a doctor on "secondary gain" or credibility. *See Clark v. Tampa Electric Co*., 416 So. 2d 475 (Fla. 2d DCA 1982); *Cook v. Eney*, 277 So. 2d 848 (Fla. 3d DCA 1973); *Davis v. State*, 527 So. 2d 962 (Fla. 5th DCA 1988).

The Eighth Circuit Court of Appeals in *United States v. Azure*, 901 F.2d 336, 340 (8th Cir. 1986) that "some expert testimony may be helpful, but putting an impressively qualified expert's stamp of truthfulness on a witness' story goes too far."  An expert should confine their testimony to whether the medical evidence is consistent with the plaintiff's story, as they are merely equipping the jury with the knowledge necessary to make this determination. *Azure*, 901 F.2d at 340.

In the present case, Defendants should be entitled to ask the examining physicians to summarize Plaintiff's history and medical findings and to express opinions concerning whether the objective medical evidence is consistent with Plaintiff's subjective complaints. However, Defendants should not be entitled to directly or indirectly comment on whether or not Plaintiff is motivated by secondary gain.

Just as an expert witness is not entitled to vouch for the credibility of a party or witness, an expert witness should not be entitled to give an opinion as to a plaintiff's motivation. *See Fagundez*, 2012 U.S. Dist. LEXIS 9349, at *5.  Defendants should not be permitted to showcase an attack on the Plaintiff's credibility by innuendo or supposition. To do so is to allow Defendants to place issues

outside the evidence, and without any evidentiary support, in front of the jury and to stamp the Plaintiff as a malingerer in the eyes of the jury.  To allow any defense witness, expert or lay, to express an opinion based upon speculation of financial gain would circumvent the jurors' decision-making role.

### 4. Probative Value Outweighed By Prejudicial Impact

"Evidence is unfairly prejudicial when it has 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily an emotional one.'" *Stump v. Gates*, 211 F.3d 527, 538 (10th Cir. 2000). Here, Defendants and its witnesses have no basis to accuse Plaintiff of malingering or secondary gain motivation. Even Defendants' neuropsychologist found no evidence of malingering or lack of trying. **Ex. 9** Levine Depo. 64:9-66:21.

In the current political climate, there is no doubt that plaintiffs may be perceived as "fakers" before they ever walk into a courtroom. This is a difficult enough burden to overcome without the additional highly prejudicial burden of "secondary gain" testimony in the trial. "Secondary Gain" testimony seeks to imply, without any factual basis whatsoever, that this particular plaintiff in this particular case is "faking" or "exaggerating" his disability for financial gain. There is absolutely no evidence or empirical data to substantiate this. This type of non-evidentiary "name calling" changes the jury trial from a search for the truth to a political "negative ad campaign against the plaintiff."  It diverts the jury's attention from the *evidence* presented by both sides to the "charged words" and innuendos being thrown at them by the defense. The highly prejudicial nature of this type of testimony precludes its admissibility in a fair trial.

Wherefore, all arguments, testimony, or inquisitions into this should be prevented.

### Motion in Limine – To Preclude Testimony from Experts who Failed to Comply with Rule 26 Disclosures

A number of Defendants' Expert Disclosures were defective and failed to either provide all

required information, supplement reports, and/or otherwise even provide a report of the information required. **Ex. 1** is Defendants' Rule 26 Disclosure in its entirety. Addressing failure to comply with Rule 26 is proper for a Motion in Limine. *See SE Prop. Holdings, LLC v. Center*, 2017 U.S. Dist. LEXIS 53592, at *8 (S.D. Ala. Apr. 7, 2017).

None of the disclosures address how much any of the experts were paid in violation of Rule 26(a)(2)(B)(vi). Each retained expert is required to provide "a statement of the compensation to be paid for the study and testimony in the case," as part of his or her expert report. Fed. R. Civ. P. 26(a)(2)(B)(vi). The amount an expert witness earns for his or her work on the case is relevant to the issue of the expert's interest and/or bias. *See Reynolds v. Gen. Motors Corp.*, 2007 U.S. Dist. LEXIS 73101, 2007 WL 2908564, at *2 (N.D. Ga. Sept. 28, 2007)(*citing Collins v. Wayne Corp.*, 621 F.2d 777, 784 (5th Cir. 1980), *superseded on non-pertinent grounds by* Fed. R. Evid. 103(a), *as recognized in Mathis v. Exxon Corp.*, 302 F.3d 448, 459 n.16 (5th Cir. 2002). Defendants have severely prejudiced Plaintiff in this regard.

Plaintiff did take the depositions of Dr. Garcia, Dr. Levine, Dr. Cades, and Mr. Vadnias – so Plaintiff is candidly aware as of those depositions the amount or approximate amount those experts have been paid – through duces tecum or questioning. This information should have been provided without need for a deposition – because "[t]he purpose of the rule governing expert witness disclosure requirements is to safeguard against surprise." *Kendall Lakes Towers Condo. Ass'n, Inc. v. Pac. Ins. Co.*, 2011 U.S. Dist. LEXIS 146270, 2011 WL 6372198, at *3 (S.D. Fla. Dec. 20, 2011). Plaintiff does not know how much has been paid to Dr. Goldschmidt, Dr. Raskin, and Dr. Livingston. This greatly prejudices Plaintiff and Plaintiff has no obligation to take extra efforts to get what Defendants were obligated to provide.

Mr. Vadnias' report was deficient, including opinions that were not clear as to basis and also

outdated and from which he withdrew at the time of his deposition – but did not bother to provide a revised opinion. **Ex. 4** Depo. Vadnias 34:11-35:18, 36;17-38:9, 38:24-40:10, 52:23-54:10. The change of opinions was based upon having received a new version of the dash camera video which had audio and apparently an uncorrupted video file – shortly after his report dated November 2, 2020. *Id.* at 10:6-22. Under Rule 26 he had an obligation to modify his Expert Report and considering the Expert Disclosure was not until January 15, 2021, which was well after he received the new video and for which new opinions were created, there is no excuse for failing to provide a new report. Plaintiff with the new opinions likely would not have gone through the time and expense of deposing Mr. Vadnias –prejudicing Plaintiff by failing to comply with Rule 26.

Dr. Goldschmidt, besides not providing disclosure of his pay, had provided an incomplete report. A Rule 35 Exam (classified as a neuropsychiatry exam) was scheduled with Dr. Goldschmidt on January 21, 2021. This was after the deadline for Expert Disclosure (January 15, 2021). Defendants supplemented the report on **February 12, 2021, at 3:54 p.m**. and Plaintiff was barred from taking the deposition of Dr. Goldschmidt because the report had not yet been furnished. Rule 26(b)(4), Fed. R. Civ. P. only allows for a deposition to take place after the report has been furnished. So Plaintiff was put into an untenable position of trying to take half a deposition (not being allowed to ask about anything gleaned from or opinions created from the examination), taking no deposition, or potentially having to go through the time and expense of two depositions if a report was timely provided. The end result was no deposition and a **very late, 47 page supplemented report**, which greatly prejudices Plaintiff by having no knowledge or basis of Dr. Goldschmidt's opinions and no way to challenge his opinions, whether at trial or via a *Daubert* motion – which cannot reasonably be drafted before the deadline of today.

Defendants' failure to comply should not be rewarded by allowing for late supplementation

or reopening discovery so that Plaintiff can depose these experts to find out the information that should be produced. *See United States v. Marder*, 318 F.R.D. 186, 191-92 (S.D. Fla. 2016).

Pursuant to "Rule 37(c)(1), a district court clearly has authority to exclude an expert's testimony where a party has failed to comply with Rule 26(a) unless the failure is substantially justified or is harmless." *OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344, 1363 (11th Cir. 2008). "The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party." *Mitchell v. Ford Motor Co*., 318 F. App'x 821, 824 (11th Cir. 2009) (quotation omitted). For example, the Eleventh Circuit has held that a report that lacks "sufficient specificity" to allow an opposing party "to prepare for rebuttal or cross-examination" is properly stricken. *Romero v. Drummond Co*., 552 F.3d 1303, 1323 (11th Cir. 2008). "[C]ourts routinely strike expert reports or exclude expert testimony which is not timely disclosed, even if the consequence is to preclude a party's entire claim or defense." *Warren v. Delvista Towers Condo. Ass'n, Inc.,* 2014 U.S. Dist. LEXIS 104069, 2014 WL 3764126, at *1 (S.D. Fla. July 30, 2014).

Cumulatively, in terms of all the failures in Defendants' Expert Disclosure, Plaintiff has been prejudiced by a failure to comply with the Rules.

Wherefore, Defendants should not be rewarded for failing to comply with the Rules and should be sanctioned for those failures by striking all of its experts who failed to properly provide full reports and disclosure of compensation depriving Plaintiff of bias information.

## **Motion in Limine – Regarding Withdrawing of Claims or Attempting to Withdraw Claims**

Based upon the language in Defendants' Response to Plaintiff's Motion to Amend [D.E. 68], Plaintiff has great concern that Defendants intend to raise issues related to the Amendment or having previously sought to withdraw claims related to mental health, emotional distress, or traumatic brain injury, as well as his wage loss claim.

Under Florida law, a party has a right to withdraw claims or parts thereof at any time. *See Health First, Inc. v. Cataldo*, 92 So. 3d 859, 865 (Fla. 5th DCA 2012)(allowing withdrawal of mental health claims). Therefore, if the Court allows Amendment [D.E. 66], then those prior claims, the treatment, and anything related to Mental Health or TBI would be completely irrelevant. *See Garbacik v. Wal-Mart Transp., LLC*, 932 So. 2d 500, 503 (Fla. 5th DCA 2006). This is because a withdrawal makes it such that a mental state is no longer in controversy and therefore has nothing to do with a claim or defense. *See Garbacik*, 932 So. 2d at 503-04. Defendants would have to show how Dr. Levine (neuropsychological testing), Dr. Goldschmidt (neuropsychiatrist), or any mental health related testing (MMPI-2, psychological testing, or intelligence testing) would be related to the orthopedic injuries in this case or a discrete issue related to another defense to bring about any testimony or evidence with amendment. *See generally Valente v. J.C. Penney Corp. Inc.*, 2010 U.S. Dist. LEXIS 149739, at *6-7 (S.D. Fla. October 4, 2010)(allowing evidence of statement against interest in mental health records to be used after a withdrawal of mental health claim, because statement against interest was distinct from the mental health claim). Plaintiff contends there would be no relevance to their testimony or examinations, and definitely not anything dealing with Plaintiff's educational background which has been made a feature by Defendants – including asking Plaintiff's parents about his ACT scores and educational history ad nauseum (considering he was 28 (almost 29) at the time of the crash). **Ex. 10** Frank Bove 12:16-14:21, 19:18-20:10, 32:2-33:10, 39:14-41:8, 43:5-44:1; **Ex. 8** Grace Bove 13:22-16:13, 17:5-20:8, 28:13-29:12, 41:5-22**.** This attack on his intelligence is irrelevant with no mental health claim and is otherwise unduly prejudicial and not probative of TBI claim. Rule 403, Fed. R. Evid.

If this Court does not allow Amendment, then Plaintiff is equally concerned Defendants

will make an issue at trial of Plaintiff attempting to Amend and withdraw claims. This is highlighted by comments by Defendants in its Response [D.E. 68], including "frivolous" and "built up" claim, that "[i]t is amazing the Plaintiff still asserts they are real," referring to the concussion and cognitive/neurologic issues; that the claim was "orchestrated," "molded," and "fabricated" by Plaintiff's counsel [Withdrawn by D.E. 70]. These comments give Plaintiff great concern that Defendants' either inquire about the withdrawing of claims through testimony or otherwise bring it out in opening statements. What takes place in motion practice or pleadings is not evidence. *United States v. Valois*, 915 F.3d 717, 726 (11th Cir. 2019)("statements and arguments of counsel are not evidence"). Additionally, any inquiry into this area would require a violation of the attorney-client privilege. Furthermore, any inquiry into this area would be irrelevant to proving or disproving a claim. Even if there was some potentially tangential relation to a claim or defense, it is so prejudicial and potentially confusing to a jury that it cannot be allowed and would fail a Rule 403 analysis.

Wherefore, Defendants should be precluded from commenting about the mental health and TBI testing and findings if Amendment is made and if Amendment is denied then this Court should not allow Defendants to question or make a theme of Plaintiff trying to limit his claim. Furthermore, Plaintiff's grades in elementary school or his ACT test scores are irrelevant and merely being raised to harass and prejudice Plaintiff and should also not be allowed into trial. The same goes for the wage loss claim sought to be withdrawn via Amendment. [D.E. 66].

## Motion in Limine – Regarding Attorney Created or Driven Claims

Defendants appear to be making a theme of this case being attorney driven (which it is not). This can be found not only in the withdrawn statements by Defendants in their Response to the Motion to Amend [D.E. 68, 70], but also even questioning of Plaintiff's father. **Ex. 10** Frank

Bove 43:2-4. In Plaintiff's Deposition he was even asked if his answer was legitimate or coached, again an implication of attorney driven. **Ex. 7** Bove Depo. 160:5-11.[1]

This theme should not be allowed to occur at trial because it has no bearing or relation to facts or evidence. The only reason to make these accusations is to try to allege a conspiracy and fraudulent acts by Plaintiff and Plaintiff's counsel – which would be a violation of Rules of Professional Conduct 4-3.4 and 4-8.4(d). This is considered improper under the law. *See generally Pippin v. Latosynski*, 622 So. 2d 566 (Fla. 1st DCA 1993)(violation of Rule 4.3-4 of Rules of Professional Conduct constitute reversible error). Defense counsel's personal beliefs have no bearing on this case and have no place a trial.

Wherefore, Defendants and counsel should therefore be barred from making any claims, inquiries, allegations, or insinuations that this case is attorney created or driven.

**Motion in Limine – Regarding Impeachment of Dr. Roush**

Plaintiff anticipates based upon the Deposition of Dr. Roush and the Response to Motion to Amend [D.E. 68] that Defendants intend to try to impeach Dr. Roush's credibility using the *Salazar v. Gomez* case. That case is not final, as it is currently on appeal with the Third District Court of Appeal, with Oral Arguments having recently taken place in Case No. 3D19-1448 (Fla. 3d DCA). As the matter is on appeal and specifically the issue of Dr. Roush's testimony and the ruling of the trial court's post-trial ruling is part of the appeal, it is pre-mature to allow impeachment with a ruling that has a likelihood of being overturned. Plaintiff would be prejudiced by allowing this impeachment and having the jury hear that Dr. Roush was supposedly "untruthful." This could create grounds for reversible error if it is used and the Third District Court of Appeal strikes the trial court's ruling.

---

[1] At Plaintiff's deposition he was also harassed over whether the words in his Interrogatory Answers were his words, despite the fact that the first answer was that Answers were prepared with the assistance of counsel – common

Wherefore, because of the potential for error and the highly prejudicial nature of it, when it is on appeal, this Court should not allow questioning or references or use of the *Salazar* case when addressing Dr. Roush.

**Motion in Limine – Limitation under *Daubert* Regarding Dr. Cades' Testimony Regarding Acting Reasonable – which Exceeds a Human Factors Analysis**

At Dr. Cades deposition (human factors expert) he offered opinions that Defendant Sanders was acting reasonably by operating her empty tractor trailer at 68-70 mph leading up to the crash on wet roads. **Ex. 11** Cades Depo. 5:19-21, 8:6-7; 56:4-70:15; **Ex. 1**, pdf. Page86. Dr. Cades is a human factors expert with no training as a commercial truck driver. *Id.* at pdf. 61-67. Dr. Cades comments on the CDL manual for industry standards, and acknowledges that under wet conditions driver's might need to reduce speed by as much as 1/3. **Ex. 11** at 64:24-65:4. Dr. Cades has no knowledge of the braking differences of a commercial truck versus a passenger car. *Id.* at 70:16-71:14. Dr. Cades' basis is that because she reduced her speed to any degree, she did as he would expect someone to do in the rain, he does not do an analysis of her actual speed reduction to see if the speed she chose was reasonable. *Id.* 56:8-57:14, 59:19-60:4, 61:3-7,64:1-14, 67:25-68:6, 71:2-72:16.

Plaintiff does not challenge Dr. Cades' ability to discuss perception and reaction times and whether Defendant Kimberly Sanders was able to perceive her surroundings and reacted within normal or reasonable time, if the foundation is laid, what is challenged here is the final step he takes which is to say that the speed at which Defendant Kimberly Sanders was driving, in the rain, with an empty trailer was reasonable. The specific factors of empty trailer and wet roads for a commercial truck have everything to do with whether a speed was reasonable and for which he is not qualified to offer expert testimony and fails a *Daubert* analysis. *See Daubert v. Merrell*

---

practice. **Ex. 7** Bove Depo. 152-164, 183:7-185:7.

*Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). To characterize Defendant Kimberly Sanders as being reasonable because she slowed at all is misleading and fails to acknowledge the industry and vehicular differences between an empty tractor-trailer and a passenger car under the same circumstances. She may have been reasonable to slow down, but completely unreasonable in the speed she chose to reduce to. <u>Even Defendant Kimberly Sanders admitted in hindsight she was going too fast for the conditions.</u> **Ex. 5**, Depo. Sanders 217:14-18.

In order for an expert to espouse an opinion, the witness must possess a reliable basis in his knowledge and experience in the discipline to form the basis for the testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148 (1998). Even if the expert has considerable experience, *Daubert* requires that the opinion be based on more than the expert's word and there be "good grounds based on what is known." *See State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, 2009 U.S. Dist. LEXIS 129705, at *56 (M.D. Fla. 2009).

The analysis begins under Rule 702, where the Court must first determine if Dr. Cades would be "qualified as an expert by **knowledge, skill, experience, training, or education**, [who] may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Frazier*, 387 F.3d at 1259. Here, the issue stems to a lack of qualification to opine as to a reasonable speed by a commercial truck with an empty trailer on wet roads.

The testimony and evidence from the professional truck drivers is that it takes longer to stop an empty trailer versus a loaded trailer and that wet roads make it harder to stop regardless, but worse with an empty trailer. Dr. Cades' analysis was based solely on standard vehicles in wet conditions, it did not have an analysis of commercial truck drivers under the similar conditions. Just

that she reduced her speed alone does not make her reasonable, when it has to be compared to what a commercial truck driver operating an unloaded trailer would do, not a standard car. The fact that he does not know the extent of the braking dynamics of a commercial truck with an empty trailer under the conditions makes his testimony unreliable and lacking in the proper foundational basis to say that driving at the speed limit or two miles below the speed limit under the conditions improper.

Therefore, the Court should exercise its "gatekeeper" function and prevent prejudicing and confusing the jury with testimony and an opinion for which the expert lacks the proper foundational basis to give.

## Motion in Limine – Referring to Claims as "Built Up"/"Frivolous"/"Belated"/"Last Minute" or Similar Expressions of Personal Opinion

Defendants' statements and choice of words in their Response to Plaintiff's Motion to Amend [D.E. 68] causes Plaintiff legitimate concerns of Defense counsel trying to bring about personal opinions at trial. The evidence does not support allegations of a "built up" or "frivolous" or "belated" or "last minute" claim, as outlined in Plaintiff's Reply. D.E. 74. The law is clear that counsel's personal opinions are not proper for expression during trial. *See United States v. Newton*, 44 F.3d 913, 921 (11th Cir. 1995) ("[w]e denounce lawyers who give their personal opinion that 'I believe the witness is telling the truth'").

Beyond being personal opinion, those types of terms are highly prejudicial due to the connotations associated with them. Defendants should not be able to poison the jury with such rhetoric that is purely a personal opinion and designed to inflame a jury. This type of highly prejudicial behavior (if done) warrants a mistrial because you can throw a skunk in jury box and tell them not to smell, but it does not do any good. *See Walt Disney World Co. v. Blalock*, 640 So. 2d 1156, 1157-1158 (Fla. 5th DCA 1994).

Wherefore, Defense should avoid the use of personal opinion when discussing the claims.

**Motion in Limine – Regarding Billing**

Plaintiff anticipates based upon the inquiry into at Dr. Roush's deposition[2] and the language regarding Letters of Protection in Defendants' Response to Amendment [D.E. 68] that they intend to make an issue of what bills have been paid by insurance, submissions of bills to insurance, or other issues involving collateral source matters.

Contrary to Defense counsel's assertion in the deposition, there is nothing unethical about a LOP. Neither the Supreme Court of Florida, nor any appellate court Plaintiff is aware, has said that a letter of protection is unethical. *See Worley v. Cent. Fla. YMCA,* 228 So. 3d 18, 30 (Fla. 2017)(indicating LOP may indicate bias); *see also Fla. Bar v. Silver*, 788 So. 2d 958, 959 (Fla. 2001)(sanctioning lawyer for failing to honor LOP). If a LOP was unethical why would the Florida Bar sanction an attorney for failing to honor it?

Florida's collateral source rules are applicable in this diversity case. *See Grell v. Bank of Am. Corp.,* 2007 U.S. Dist. LEXIS 33280, at *4-14(M.D. Fla. May 7, 2007). It is improper to introduce issues of payments by insurance companies to the jury. *Id.* Furthermore, there is no requirement to submit billing to a health insurance company and it is improper to engage in any hypothetical related to what an insurance company "might have paid." *Id.* It is also proper for the jury to hear the full amount of medical bills owed under a letter of protection. *Id.* Therefore, There should be no reference, directly or indirectly, in any manner whatsoever, to collateral source benefits that Plaintiff has received, will receive or will be entitled to receive in the future. Under § 768.76 Fl. Stat. (2004) and *Goble v. Frohman*, any deduction for collateral source benefits, where authorized by statute, is to be performed by the Court – not the jury – in a post-trial procedure. 901 So. 2d 830, 833 (Fla. 2005); *see also Nationwide Mut. Fire Ins. Co. v. Harrell*, 53 So. 3d 1084,

---

[2] Dr. Roush has a financial agreement with a lien that the patient is responsible for regardless of outcome. It's not signed by an attorney and different from a LOP. **Ex.12** Depo. Roush 6:2-16, 35:9-18, 52:21-54:11, 117:18-118:12.

1087 (Fla. 1st DCA 2011). Defendants should be prohibited from any reference to the existence of such benefits in the trial of this cause to avoid a misleading suggestion of "double dipping," and the confusion on liability issues generated by such a negative implication. *See Gormley v. GTE Prods. Corp.*, 587 So. 2d 455 (Fla. 1991)(finding reversible error in admission of evidence of collateral source payments because of propensity to prejudice jury determination on liability); *see also Benton v. CSX Transp., Inc.*, 898 So. 2d 243, 245 (Fla. 4th DCA 2005) (stating "the inadmissibility of collateral sources evidence enjoys a long history of legal precedent"); *Winston Towers Ass'n v. DeCarlo*, 481 So.2d 1261 (Fla. 3d DCA 1986); *Walker v. Jeep Corp.*, 528 So. 2d 1203 (Fla. 4th DCA 1988); *Measom v. Rainbow Connection Preschool, Inc.*, 568 So. 2d 123 (Fla. 5th DCA 1990).

Plaintiff is entitled to present to the jury the full amount of medical bills, not the reduced medical coverage amounts. *See Nationwide Mut. Fire Ins. Co. v. Harrell*, 53 So. 3d 1084, 1087 (Fla. 1st DCA 2011); *Durse v. Henn,* 68 So. 3d 271, 275-77 (Fla. 4th DCA 2011). Anything else would be irrelevant and misleading in violation of the law. It is further improper to attempt to setoff any future payments under the collateral source statute. *See Ritter v. Metro. Cas. Ins. Co.,* 2020 U.S. Dist. LEXIS 201970, at *6-7 (S.D. Fla. Sep. 30, 2020).

Wherefore, Defendants should be precluded from discussing whether payments have been made, whether insurance exists, what insurance has paid, what insurance would pay, or otherwise implicating the collateral source rule.

**Motion in Limine – Regarding Financial Status of Plaintiff**

Defendants in discovery attempted to seek information regarding Plaintiff's financial status, including credit card information, debt, or what he spends money on. This has created a cognizable concern that Defendants intend to try to raise issues of Plaintiff's financial status at trial. This is irrelevant and misleading under Rule 403 and should be prevented. *See Gomez v.*

*City of Miami Beach,* 2012 U.S. Dist. LEXIS 198391, at *4 (S.D. Fla. Mar. 2, 2012). "The general rule is that, during trial, 'no reference should be made to the wealth or poverty of a party, nor should the financial status of one party be contrasted with the other's.'" *Brough v. Imperial Sterling Ltd.*, 297 F.3d 1172, 1178 (11th Cir. 2002) "The erroneous admission of such evidence can constitute reversible error." *Id.*

Wherefore, Defendants should be ordered to avoid any commentary and/or questioning regarding this matter.

**Motion in Limine – Regarding Examining Doctors and Being Called Independent or Court Appointed**

Based upon the language in Defendants' Response to Plaintiff's Motion to Amend, Plaintiff is concerned Defendants intend to refer to their hired/retained experts as "independent" or "Court Appointed" or "Court Approved" witnesses. [D.E. 68].

Dr. Garcia, Dr. Levine, and Dr. Goldschmidt who did Rule 35 exams are not the Court's experts, but individuals hired, retained, and paid by Defendants. To characterize them as anything but retained experts is highly prejudicial and misleading under Rule 403 and fails to acknowledge the truth of the matter.

Wherefore, this Court should not allow any references to those doctors being anything by paid Defense experts.

**CONCLUSION**

Plaintiff Stephen Bove moves this Honorable Court to grant the relief sought by each motion in limine contained here.

## CERTIFICATE OF GOOD FAITH

I HEREBY CERTIFY, pursuant to Local Rule 7.1(A)(3) of the Southern District of Florida, that undersigned counsel conferred with opposing counsel via email on February 12, 2021, and via telephone call as well.  At the conferral the parties were unable to agree as to the majority Motions in Limine, but agreed to continue to discuss to see if resolutions could be achieved.  Defense Counsel Edward Nicklaus, Esq. did agree that Defendant XPO would be vicariously liable to the extent Defendant Kimberly Sanders was negligent and agreed a discussion of insurance would not be proper.  Local Rule 7.1(A)(3) was modified effective December 1, 2020, to allow written conferral attempts.

Respectfully submitted,

**MURRAY GUARI**
**TRIAL ATTORNEYS PL**
 /s/ *Scott B. Perry*
JASON J. GUARI, ESQ.
Florida Bar No.: 0076960
SCOTT B. PERRY, ESQ.
Florida Bar No.: 99092
1525 N. Flagler Drive, Suite 100
West Palm Beach, FL 33401
Tel:    (561) 366-9099
Fax:    (561) 366-9098
Email: sperry@murrayguari.com
            pleadings@murrayguari.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by

CM/ECF or in some other authorized manner for those counsel or parties who are not authorized

to receive electronically Notices of Electronic Filing.

/s/ *Scott B. Perry*
Scott B. Perry

### SERVICE LIST

**CASE NO:** 9:20-cv-80945-DMM

| | |
|---|---|
| Edward A. Nicklaus, Esq., <br> eddyn@nicklauslaw.com <br> Nicklaus Law <br> 4651 Ponce de Leon Blvd., Suite 200 <br> Coral Gables, FL  33146 | Jason J. Guari, Esq. <br> jguari@murrayguari.com <br> Murray Guari Trial Attorneys PL <br> 1525 N. Flagler Drive, Suite 100 <br> West Palm Beach, Florida 33401 |
| Edward R. Nicklaus, Esq., <br> EdwardN@nicklauslaw.com <br> Nicklaus Law <br> 4651 Ponce de Leon Blvd., Suite 200 <br> Coral Gables, FL  33146 | Scott B. Perry, Esq. <br> sperry@murrayguari.com <br> Murray Guari Trial Attorneys PL <br> 1525 N. Flagler Drive, Suite 100 <br> West Palm Beach, Florida 33401 |